**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff Frankle*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID FRANKLE, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOLLISTER CO., and ABERCROMBIE & FITCH CO.,<br><br>Defendants. | Case No. 3:25-cv-07338-MMC<br><br>Hon. Maxine M. Chesney<br><br>**PLAINTIFF FRANKLE'S OPPOSITION TO DEFENDANTS' MOTIONS TO TRANSFER AND COMPEL ARBITRATION**<br><br>DATE: January 23, 2026<br>TIME: 9:00 a.m.<br>CTRM: 7, 19th Floor |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................1

II. BACKGROUND ........................................................................................................2

A. The Terms of Use........................................................................................................2

B. Plaintiff Salinas Is No Longer a Party to This Action. ..........................................3

C. Defendants Do Not Dispute That David Frankle Did Nothing More Than Browse Defendants' Website. ....................................................................................3

III. ARGUMENT ........................................................................................................4

A. Defendants' Request That the Court Decide Transfer First Is a Transparent Attempt at Forum Shopping and Should Be Rejected. ..........................................4

B. Defendants' Motion to Transfer Must Be Denied. ..................................................4

1. Venue is Proper in the Northern District of California. ..............................4

2. Defendants' Forum-Selection Clause Is Not Enforceable Because Plaintiff Frankle Did Not Assent to the Terms. ...............................................5

3. The Court Should Not Grant Permissive Transfer Under § 1404(a). ........12

4. Defendants' Improper-Venue Argument as to Salinas Is Both Incorrect and Moot. .........................................................................................21

C. Defendants' Motion to Compel Arbitration Must Be Denied. ........................... 22

1. The Motion to Compel Arbitration Fails for the Same Reasons as the Transfer Motion: It Is Based on Unenforceable Browsewrap. ..................22

2. Defendants' Equitable-Estoppel Theory Fails. .........................................24

3. Salinas's Alleged Assent Cannot Be Imputed to Frankle. .........................25

IV. CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49 (2013) .......... 5

*Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 U.S. Dist. LEXIS 146020 (N.D. Cal. Apr. 7, 2010) .......... 20

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... passim

*Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810 (N.D. Cal. 2008). .......... 19

*Briskin v. Shopify, Inc.* 135 F.4th 739 (9th Cir. 2025) .......... 5, 21

*Brooks v. WarnerMedia Direct LLC*, No. CV 23-7579-GW-MRWx, 2023 WL 10706636 (C.D. Cal. Dec. 1, 2023) .......... 7

*Brown v. Abercrombie & Fitch Co.*, No. 4:13-cv-05205 YGR, 2014 U.S. Dist. LEXIS 19414 (N.D. Cal. Feb. 14, 2014) .......... 15

*Brown v. DetailxXPerts Franchise Sys., LLC*, No. 18-cv-02430-SVK, 2020 U.S. Dist. LEXIS 158441 (N.D. Cal. Aug. 31, 2020) .......... 13

*Burgess v. HP, Inc.*, No. 16-cv-04784-LHK, 2017 U.S. Dist. LEXIS 15801 (N.D. Cal. Feb. 3, 2017) .......... 15

*Cal. Writer's Club v. Sonders*, No. C-11-02566 JCS, 2011 U.S. Dist. LEXIS 113699 (N.D. Cal. Oct. 3, 2011) .......... 19

*Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025) .......... 8, 10, 11

*Cohn v. OppenheimerFunds, Inc.*, No. 09-cv-1656-WQH-BLM, 2009 U.S. Dist. LEXIS 106749 (S.D. Cal. Nov. 12, 2009) .......... 15

*Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) .......... 8

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2015 U.S. Dist. LEXIS 95004 (N.D. Cal. July 21, 2015) .......... 18

*Cooper v. Slice Techs., Inc.*, No. 17-cv-02340-LB, 2017 U.S. Dist. LEXIS 149480

(N.D. Cal. Sep. 14, 2017) .......... 7

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) .......... 13

*Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020) .......... 7

*Flint v. UGS Corp.*, No. C07-04640, 2007 U.S. Dist. LEXIS 94643 (N.D. Cal. Dec. 12, 2007) .......... 12, 19, 20

*Garcia v. Roadrunner Transp. Servs.*, No. 20-cv-06918-MMC, 2021 U.S. Dist. LEXIS 135253 (N.D. Cal. July 20, 2021) .......... 6

*Getz v. Boeing Co.*, 547 F. Supp. 2d 1080 (N.D. Cal. 2008) .......... 21

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-cv-00920-LB, 2016 U.S. Dist. LEXIS 107121 (N.D. Cal. Aug. 12, 2016) .......... 7

*Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497 (2012) .......... 24

*Greben v. Cinmar, LLC*, No. 2:24-cv-10140-MRA-BFM, 2025 WL 1765916 (C.D. Cal. May 30, 2025) .......... 15

*Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 U.S. Dist. LEXIS 41718 (N.D. Cal. Mar. 25, 2014) .......... 18, 19, 21

*Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) .......... 11

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007) .......... 6

*Hope v. Lunarlandowner.com, Inc.*, No. 2:20-cv-01783-TLN-DB, 2022 U.S. Dist. LEXIS 35204 (E.D. Cal. Feb. 24, 2022) .......... 14

*In re Ferrero Litig.*, 768 F. Supp. 2d 1074 (S.D. Cal. 2011) .......... 18

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .......... 13, 19

*LegalForce RAPC Worldwide P.C. v. Swyers*, No. 17-cv-07318-MMC, 2018 U.S. Dist. LEXIS 108609 (N.D. Cal. June 28, 2018) .......... 6

*Lightfoot v. MoneyonMobile, Inc.*, No. 18-cv-07123-YGR, 2019 U.S. Dist. LEXIS 99492 (N.D. Cal. June 13, 2019) .......... 7

*Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855 (2016) .......... 10, 11

*Montenegro v. Johnson & Johnson Consumer, Inc.*, No. 2:24-CV-01895-SB-BFM, 2024 U.S. Dist. LEXIS 204949 (C.D. Cal. Sept. 16, 2024).......... 15

*Mora v. United States Customs & Border Prot.*, No. 3:24-cv-02430-TLT, 2024 LX 36251 (N.D. Cal. Nov. 4, 2024).......... 14

*Moretti v. Hertz Corp*., 2014 U.S. Dist. LEXIS 50660 (N.D. Cal. 2014) .......... 6

*Nelkin v. Kroto, Inc*., No. CV 23-8241-KK-MAAx, 2024 U.S. Dist. LEXIS 133926 (C.D. Cal. June 24, 2024) .......... 6

*Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014) .......... passim

*Olosoni v. HRB Tax Grp., Inc.,* No. 19-cv-03610-SK, 2019 U.S. Dist. LEXIS 224896 (N.D. Cal. Nov. 27, 2019).......... 5, 18, 20

*Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088 (N.D. Cal. 2013).......... 14

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).......... 12

*R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 U.S. Dist. LEXIS 217426 (C.D. Cal. July 30, 2019).......... 14

*Reza v. Zuffa, LLC*, No. 22-cv-09068-MMC, 2023 LX 134739 (N.D. Cal. Mar. 22, 2023).......... 7

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .......... 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007).......... 4

*Spread Your Wings, LLC v. AMZ Grp. LLC*, No. 20-cv-03336-VKD, 2020 U.S. Dist. LEXIS 178356 (N.D. Cal. Sep. 25, 2020).......... 7

*Stoneville USA, Inc. v. Compacstone USA, Inc.*, No. CV 19-10252 PA (SSx), 2020 U.S. Dist. LEXIS 264257 (C.D. Cal. Mar. 5, 2020) .......... 7

*Strigliabotti v. Franklin Res., Inc.*,

No. C 04-0883 SI, 2004 U.S. Dist. LEXIS 31965 (N.D. Cal. Oct. 5, 2004) ........ 22

*Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. SACV 14-1664-JVS-DFMx, 2015 U.S. Dist. LEXIS 186835 (C.D. Cal. Feb. 3, 2015) ........ 5

*Van Meter v. Mondelez Int'l, Inc.*, No. 24-cv-00565-AMO, 2025 LX 114210 (N.D. Cal. Mar. 18, 2025) ........ 15

*Visier, Inc. v. iCIMS, Inc.*, No. 24-cv-07544-SVK, 2025 LX 135024 (N.D. Cal. Feb. 24, 2025) ........ passim

*Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077 (2024) ........ 8

*Williams v. Bowman*, 157 F. Supp. 2d 1106 (N.D. Cal. 2001) ........ 15

## STATUTES

28 U.S.C. § 1391 ........ 26, 27

28 U.S.C. § 1391(b)(1) ........ 4, 5

28 U.S.C. § 1391(b)(2) ........ 4, 26

28 U.S.C. § 1404(a) ........ 1, 2, 6

28 U.S.C. § 1406 ........ 26

## I. INTRODUCTION

Defendants' motions to transfer and to compel arbitration rest almost entirely on now-irrelevant arguments directed at former Plaintiff Maria Salinas. Both motions repeatedly rely on Salinas's alleged assent to Hollister's Rewards Terms and Sale Terms and on venue theories that apply only to her. But Salinas is no longer a party to this action and any arguments pertaining to her are now moot.

What remains is a single Plaintiff: David Frankle. Defendants identify no evidence that Plaintiff Frankle ever agreed to any Terms of Use ("Terms"), forum-selection clause, or arbitration provision. He never created an account, enrolled in a rewards program, made a purchase, or clicked any button signaling assent. His only conduct was visiting the Hollister website, expressly rejecting third-party marketing and tracking cookies, and browsing the site. Defendants do not dispute these facts. Instead, they largely conflate their arguments against two different Plaintiffs in the apparent hope that the Court will treat them as one. That approach fails. Under controlling Ninth Circuit authority, merely browsing a website does not form a contract. *Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014). And the actions of one plaintiff do not bind another—particularly where that other plaintiff is no longer a party to the case. Because Plaintiff Frankle never assented to any terms, Defendants cannot enforce a forum-selection clause or an arbitration provision against him. Nor, contrary to Defendants' suggestion, is there any presumption that a forum-selection clause is valid absent proof of an underlying agreement.

Defendants' fallback request for discretionary transfer under 28 U.S.C. § 1404(a) fares no better. Defendants must make a strong showing of inconvenience to overcome the weight accorded Plaintiff's choice of forum. They do not. This is not a case where the operative facts are centered in Ohio or where litigating in California would impose any genuine burden on parties or witnesses. Plaintiff Frankle resides in this District, accessed Defendants' website here, relied on Defendants' representations here, and suffered his injury here. The alleged misconduct occurred while Defendants' website interacted with Frankle's device in California, routed his data through servers located in or near San Francisco, and transmitted that data to third-parties. Further, this is a putative California class action. Defendants' attempt to reframe this California-centered dispute as an Ohio-based controversy rests almost entirely on the location of their corporate headquarters and their own employees, considerations that carry little weight in the § 1404(a) analysis and cannot justify transfer. Because transfer would merely shift inconvenience,

undermine Plaintiff's legitimate forum choice, and serve no interest of justice, Defendants' § 1404(a) motion should be denied.[1]

The transfer request also fails for a separate and broader reason: it is a transparent attempt at forum shopping. Defendants ask this Court to decide the transfer motion first so that a judge in Ohio, rather than this Court, can decide their arbitration motion. Their asserted "convenience" rationale for transferring this case, however, is not credible. The arbitration clause they wish an Ohio court to enforce requires "[a]ny in-person hearing" to occur in the consumer's home "county or parish." ECF No. 23 ("Monaco Decl."), Ex. B ("Rewards Terms") at 27, Ex. C ("Website Terms") at 43, Ex. E ("Sales Terms") at 64.[2] Thus, even if this case were transferred and arbitration compelled, the arbitration would ultimately still take place in California. That reality exposes Defendants' reliance on convenience as pretext and underscores that their true aim is to have their arbitration motion decided by a different court they believe will be more sympathetic to their arguments. Section 1404(a) does not permit that result.

Once Defendants' Salinas-focused arguments are stripped away—and they must be—the Motions offer no basis for transferring this action to Ohio and no basis for compelling arbitration. The case should remain in this Court, and Defendants' motions should be denied.

## II. BACKGROUND

### A. The Terms of Use.

Defendants rely on three separate sets of Terms that they contend govern consumers' use of the Hollister website and related transactions: (1) the Rewards Terms, (2) the Sales Terms, and (3) the Website Terms. Monaco Decl., Exs. B, C, E.

---

[1] Defendants inexplicably invoke an unrelated arbitration that was brought by Plaintiff's counsel against Dollar Tree to suggest that this case "belongs" in arbitration. The Dollar Tree matter involved a different plaintiff, a different defendant, a different website, and different terms of use. Further, what Defendants omit is that in *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 LX 466484, at *61 (N.D. Cal. Oct. 16, 2025), an action now pending in this District, defense counsel made a nearly identical request to transfer the case, relying on an unenforceable browsewrap agreement and urging permissive transfer. The request was denied because defendant "failed to carry its burden to show that the convenience to the parties and the interest of justice factors weigh toward transfer." *Id. Walsh* provides a direct and persuasive roadmap for denying transfer in this case as well.

[2] Plaintiff's pincites with respect to filed documents refer to the official CM/ECF stamp at the top of the cited documents.

First, Defendants maintain that consumers who enroll in the Hollister rewards program are presented with the Rewards Terms and must affirmatively indicate assent as part of the enrollment process by clicking a checkbox. *Id.* ¶¶ 15–17.

Second, Defendants assert that consumers who make a purchase on the Hollister website are presented with language stating, "By submitting my order, I agree to be bound by the terms and policies linked above," together with hyperlinks to the Sales Terms and Website Terms and a blue "Submit Order" button that consumers must click to complete the purchase. *Id.* ¶¶ 26–30.

Third, Defendants assert that Website Terms are available through a hyperlink located in the footer of the Hollister website. *Id.* ¶ 22. Defendants provide no screenshots or contemporaneous evidence showing how that hyperlink appeared or was presented to users like Plaintiff Frankle, they merely state that the "[a] hyperlink that appears at the bottom of every page of the Website leads to the Website Terms." *Id.* Plaintiff offers evidence showing that the hyperlink appears in small, grey font on a grey background, and in some formats such as on a smart phone, tablet, or smaller computer screen, it does not appear at all. Thairani Decl. ¶¶ 3–13, Exs. 2, 4, 6. In the instances where the Website Terms do appear, it sometimes requires users to scroll several screen lengths to reach the footer, which most consumers are unlikely to do. *Id.* ¶ 12.

Defendants assert that all versions of the terms contain materially identical forum-selection and arbitration provisions. ECF No. 21 at 13.

**B. Plaintiff Salinas Is No Longer a Party to This Action.**

In their motions, Defendants assert that Plaintiff Salinas made online purchases through the Hollister website and enrolled in the Hollister House Rewards program, and during that process purportedly manifested assent to the Sales and Rewards Terms by clicking a box. Salinas does not recall agreeing to the Rewards Terms or Sales Terms, nor does she believe that the Terms were adequately disclosed. In any event, on December 18, 2025, Maria Salinas voluntarily dismissed her claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Salinas is no longer a party, and only Plaintiff Frankle's claims remain before this Court.

**C. Defendants Do Not Dispute That David Frankle Did Nothing More Than Browse Defendants' Website.**

Plaintiff Frankle is a California resident who merely visited Defendants' website,

www.hollisterco.com, during the relevant period. As alleged in the Complaint, Frankle accessed the website to view Defendants' clothing products, and in doing so, his browser initiated standard HTTP requests that communicated with Defendants' servers located in or near San Francisco. *See* Compl. ¶¶ 12, 71–80. Defendants present no evidence that Plaintiff Frankle agreed to the Rewards Terms, Sales Terms, or Website Terms.

## III. ARGUMENT

### A. Defendants' Request That the Court Decide Transfer First Is a Transparent Attempt at Forum Shopping and Should Be Rejected.

Defendants urge the Court to decide their motion to transfer first and have a different court rule on arbitrability. It is true that courts have discretion to address threshold issues in a practical order. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). But that discretion should not be exercised where, as here, the proposed sequencing serves no legitimate convenience interest and would instead facilitate forum shopping.

Defendants' asserted rationale for sequencing collapses on its own facts. Even if the Court were to transfer this action and Defendants prevailed on their motion to compel arbitration, Defendants' unenforceable arbitration clause requires that "[a]ny in-person hearing will be held in the county or parish where you live or at another mutually agreed location." ECF No. 23 at 27. For Plaintiff Frankle, that is Alameda County, California. Indeed, if Defendants get what they are seeking, transfer would therefore not reduce burdens, relocate witnesses, or improve efficiency. The only practical consequence of deciding transfer first would be to shift the arbitrability determination to a different court.

Moreover, the issues presented by the two motions substantially overlap. Both turn on the same threshold question: whether Defendants can enforce a browsewrap agreement against Frankle. Where contract formation is disputed and dispositive of both motions, there is no reason to defer arbitrability to another court or to risk inconsistent rulings on the same underlying issue.

### B. Defendants' Motion to Transfer Must Be Denied.

#### 1. Venue is Proper in the Northern District of California.

Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in any district where a substantial part of the events or omissions giving rise to the claim occurred. Pursuant to 28 U.S.C. § 1391(b)(1), venue is also

proper in any district of California where a defendant "resides." For venue purposes, Defendants "reside[]" in any judicial district where they are subject to personal jurisdiction. 28 U.S.C. § 1391(c).

Here, venue in the Northern District of California is proper because Plaintiff Frankle alleges that Defendants displayed to California consumers a popup consent banner which falsely promised that users could reject non-essential tracking cookies, including those involving the "Share or Sale of Personal Data." ECF No. 1 ("Compl.") ¶¶ 27–31. Plaintiff specifically visited and interacted with the Hollister Website from his residence in Oakland, California**,** which is within this District. *Id.* ¶¶ 6, 71–79. Additionally, Plaintiff alleges that Defendants' tracking and interception practices caused his private communications to be routed through servers located in or near San Francisco, which independently establishes venue. *Id.* ¶¶ 12 – 14. Venue is therefore proper. *Briskin v. Shopify, Inc*., 135 F.4th 739, 759 (9th Cir. 2025) ("it is clear that [defendant] expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws."); *Olosoni v. HRB Tax Grp., Inc.,* No. 19-cv-03610-SK, 2019 U.S. Dist. LEXIS 224896, at *9 (N.D. Cal. Nov. 27, 2019) ("A substantial portion of the events at issue occurred in this district and Defendants are subject to personal jurisdiction here based on their contacts with the forum."); *see Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56–57 (2013) (venue is proper so long as the requirements of §1391(b) are met, irrespective of any forum-selection clause).

### 2. Defendants' Forum-Selection Clause Is Not Enforceable Because Plaintiff Frankle Did Not Assent to the Terms.

A party may seek to enforce a forum-selection clause through a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co.*, 571 U.S. 49, 58–63. But *Atlantic Marine*—and Defendants' reliance on it—presupposes the existence of a valid contract containing a forum-selection clause. Before any deference is given to such a clause, the Court must first determine whether a binding agreement exists at all. *See*, *e.g.*, *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. SACV 14-1664-JVS-DFMx, 2015 U.S. Dist. LEXIS 186835, at *2 (C.D. Cal. Feb. 3, 2015) ("[B]efore the court may consider the impact of any forum selection clause, it must first determine whether a contract exists."); *accord Nelkin v. Kroto, Inc*., No. CV 23-8241-KK-MAAx, 2024 U.S. Dist. LEXIS 133926, at *4 (C.D. Cal. June 24, 2024); *Moretti v. Hertz Corp*., 2014 U.S. Dist. LEXIS 50660, at *2 (N.D. Cal. 2014). Accordingly, this Court has made clear that

the party seeking to enforce a forum-selection clause bears "the initial burden to establish that the opposing parties are bound by the contract in which the forum selection clause is contained." *LegalForce RAPC Worldwide P.C. v. Swyers*, No. 17-cv-07318-MMC, 2018 U.S. Dist. LEXIS 108609, at *3 (N.D. Cal. June 28, 2018) (Chesney, J.) (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456–57 (9th Cir. 2007)).

Defendants make virtually no effort to satisfy that threshold burden as to Plaintiff Frankle. They assert only that "[o]n information and belief, Mr. Frankle previously agreed to the Website Terms and the forum-selection and arbitration clauses contained therein when he browsed the Hollister website." Monaco Decl. ¶ 44. Defendants do not even attempt to establish the facts relevant to that conclusory supposition. They do not explain how they might have been presented to Plaintiff, what the hyperlinks at the bottom of their webpages looked like, whether or how Plaintiff acknowledged or agreed to any terms, or how any particular website interaction purportedly created a binding and enforceable agreement to the purported forum-selection clause. Indeed, the available screenshots of Defendants' website (offered by Plaintiff) demonstrate that a user can easily browse the Hollister website without ever seeing a link to the Terms. *See* Thairani Decl. ¶¶ 3–13, Exs. 1–6.

Despite failing to establish the existence of any binding agreement, Defendants argue that this dispute is within the scope of the forum-selection clause and that it is presumptively enforceable. ECF No. 21 at 8–15. These arguments skip a critical step. The presumption of enforceability arises only after the party seeking enforcement has met its threshold burden to show that a valid contract containing a forum-selection clause exists. Defendants' reliance on *Garcia v. Roadrunner Transp. Servs.*, No. 20-cv-06918-MMC, 2021 U.S. Dist. LEXIS 135253, at *4 (N.D. Cal. July 20, 2021) (Chesney, J.) is illustrative. *Garcia* did not involve any dispute over contract formation; the parties agreed that a valid contract existed. Rather, the primary argument was over the scope of the forum-selection clause and whether it was applicable to the claims brought. In that posture, courts appropriately consider whether a plaintiff can overcome a presumptively valid forum-selection clause by showing (1) fraud, (2) contravention of public policy, or that (3) enforcement would effectively deprive the litigant of a day in court. Those factors are irrelevant here because there is no agreement in the first place. Nearly every case Defendants cite suffers from the same defect: each involved an undisputed agreement containing a forum-selection clause. *See*,

*e.g.*, *Cooper v. Slice Techs., Inc.*, No. 17-cv-02340-LB, 2017 U.S. Dist. LEXIS 149480, at *8 (N.D. Cal. Sep. 14, 2017); ("The Plaintiffs do not dispute that they assented to UnrollMe's terms of Use and its forum-selection clause."); *Brooks v. WarnerMedia Direct LLC*, No. CV 23-7579-GW-MRWx, 2023 WL 10706636, at *4 (C.D. Cal. Dec. 1, 2023) (same); *Lightfoot v. MoneyonMobile, Inc.*, No. 18-cv-07123-YGR, 2019 U.S. Dist. LEXIS 99492, at *3 (N.D. Cal. June 13, 2019) (no dispute that Plaintiff executed an agreement, including a forum-selection clause); *Stoneville USA, Inc. v. Compacstone USA, Inc.*, No. CV 19-10252 PA (SSx), 2020 U.S. Dist. LEXIS 264257, at *10 (C.D. Cal. Mar. 5, 2020) (Court determined Defendant had met its burden to show that Defendant had agreed to the forum-selection clause); *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-cv-00920-LB, 2016 U.S. Dist. LEXIS 107121, at *3 (N.D. Cal. Aug. 12, 2016) (no dispute that the parties had entered into a brokerage contract containing a forum-selection clause); *Spread Your Wings, LLC v. AMZ Grp. LLC*, No. 20-cv-03336-VKD, 2020 U.S. Dist. LEXIS 178356, at *12-13 (N.D. Cal. Sep. 25, 2020) ("[T]here is no apparent dispute as to the existence of any of the Agreements at issue."); *Reza v. Zuffa, LLC*, No. 22-cv-09068-MMC, 2023 LX 134739, at *3 (N.D. Cal. Mar. 22, 2023) (Chesney, J.) (similar). Because Defendants cannot show that Plaintiff Frankle ever agreed to any forum-selection clause, the enforceability analysis Defendants invoke never comes into play. Plaintiff therefore need not—and does not—address Defendants' arguments concerning fraud, public policy, deprivation of a day in court, or other "exceptional circumstances" all of which presuppose a valid agreement that does not exist. In any event, to the extent Defendants advance such arguments, they are directed to former Plaintiff Salinas, not Plaintiff Frankle, and are independently inapplicable on that basis as well.

In determining whether a contract exists, "[t]he internet has not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) (internal quotation marks and citation omitted). A consumer may be bound by online terms if "a reasonably prudent Internet consumer" would be put on "inquiry notice" of the "agreement's existence and contents." *Id.* Website terms will be enforced against a consumer based on inquiry notice only if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests

his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Contracts formed over the Internet generally fall into two categories: (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use"; and (2) "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1175–76; *see also Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1085 (2024) (describing same analytical framework). These two categories of Internet contracts fall on two ends of a spectrum; courts routinely find clickwrap agreements enforceable, but "consistently decline to enforce browsewraps." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025); *see also Berman*, 30 F.4th at 856; *Weeks*, 100 Cal. App. 5th at 1085 (holding "clickwrap agreements have been held to manifest assent, even on consumers who did not read them" and because browsewrap does not require the user to take any unambiguous action to agree to the terms of use, "courts have reached consistent conclusions" generally finding "browsewrap agreements to be unenforceable.").

Some internet contracts blend the two types of contracts and are referred to as "modified clickwrap," or "sign-in wrap" agreements. *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019). These contracts exist where a "signup screen states that acceptance of a separate agreement is required before the user can access the service." *Id.*; *see also Weeks*, 100 Cal. App. 5th at 1086 (websites can "present some hybrid of the two, where "'a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service.") Courts are "more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement . . . [and] the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Nguyen*, 763 F.3d at 1176–77.

This case presents nothing more than an unenforceable browsewrap agreement.

**a. Defendants' Terms are not valid clickwrap, scrollwrap, or sign-in wrap agreements.**

Here, the agreement Defendants attempt to enforce against Plaintiff Frankle did ***not*** include a clickwrap, scrollwrap, or sign-in wrap interface. As explained above, a clickwrap agreement requires a user to click an "I agree" box after being directly presented with the terms and conditions. *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 464 (2021); *Nguyen*, 763 F.3d at 1176–77.

Although Defendants argue that their Website presents a clickwrap and/or sign-in wrap interface for consumers who enroll in their rewards account program and make purchases, Defendants do not dispute that ***Plaintiff Frankle did neither***. *See* Monaco Decl. ¶ 44. He merely browsed the Website and did not affirmatively click any button or box manifesting assent to any Terms. The Hollister website does not present any separate or explicit "I agree" button that must be clicked to browse the website. Nor are the Terms mentioned or incorporated into any interface that Plaintiff was required to click—such as the cookie banner. The only link to "Terms & Conditions" appears inconspicuously at the very bottom of the Website. *See* Thairani Decl. ¶ 12, Ex. 6. Nothing on the Website indicated that Plaintiff's use of the site would be subject to those Terms. To the contrary, Plaintiff was told only that his continued use would be governed by his rejection of advertising cookies—an assurance he alleges was false.

**b. Defendants Seek to Enforce Invalid Browsewrap Terms.**

Defendants are seeking to enforce a supposed browsewrap agreement against Plaintiff Frankle. But Defendants' browsewrap terms are not enforceable because they fail to satisfy the requirements of the inquiry notice standard: (1) the terms were not reasonably conspicuous; and (2) Plaintiff did not take "some action, such as clicking a button or checking a box, that unambiguously manifest[ed] his or her assent to those terms." *Berman*, 30 F.4th at 856.

In *Nguyen*, the Ninth Circuit set forth a bright-line rule that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id*. at 1178–1179. Indeed, the terms of use in *Nguyen* were ***far more*** conspicuous than the Terms on the Hollister Website, and the plaintiff in *Nguyen* had actually made a purchase on the

website. There, the defendant's website included a "'Terms and Conditions' link . . . either directly below the relevant button a user must click on to proceed in the checkout process or just a few inches away. On some pages, the content of the webpage is compact enough that a user can view the link without scrolling. On the remaining pages, the hyperlink is close enough to the 'Proceed with Checkout' button that a user would have to bring the link within his field of vision in order to complete his order." *Id.* at 1178. Still, the Ninth Circuit concluded that the links were insufficiently prominent to place the plaintiff on constructive notice of the terms of use. *Id.* The court reasoned that, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers. Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id*. at 1179.

In *Long*, the California Court of Appeals agreed with the Ninth Circuit's analysis in *Nguyen*, endorsing its bright-line rule "that, to establish the enforceability of a browsewrap agreement, a textual notice should be required to advise consumers that continued use of a Web site will constitute the consumer's agreement to be bound by the Web site's terms of use." *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 867 (2016) (citing *Nguyen*, 763 F.3d at 1178–79). The conclusion that the party was not on inquiry notice of the browsewrap agreement was straightforward in *Long* because the hyperlinks to the terms of use were so difficult to find. *Long*, 245 Cal.App.4th at 863. They were at the bottom of the webpage beneath multiple layers of footers and were displayed in a green typeface that "could blend in with the . . . site's lime green background." *Id*. at 866.

Most recently, in *Chabolla v. Classpass Inc.*, the Ninth Circuit found that the defendant's notice to its terms of use, which "resemble[d] something between clickwrap and browsewrap[,]" was insufficient because of its "distance from relevant action items, its placement outside of the user's natural flow, and its font—notably timid in both size and color, we find that it is 'deemphasized by the overall design of the webpage' and not 'prominently displayed.'" 129 F.4th at 1147, 1154, 1157 (quoting *Berman*, 30 F.4th at 857). There, the terms were listed "in the smallest font on the page," and the words "Terms of Use" and "Privacy Policy" were in blue, with the rest of the text in gray. *Id*. at 1152.

As *Berman* explains, "to be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen

it." 30 F.4th at 856. But here, the popup banner does not incorporate or even mention the Terms. Compl. ¶ 1. Nor is the Website Terms link even close to the popup banner. *See* Thairani Decl., ¶ 12, Ex. 6. Indeed, Defendants' purported browsewrap agreement is even less conspicuous than the designs rejected in *Nguyen*, *Long*, and *Classpass*. In many instances, the Website Terms hyperlink is not even visible even when a user is deliberately searching for it at the bottom of the page. *Id.* ¶¶ 3–13, Exs. 1–6. But even taking Defendants at their word that the Website Terms hyperlink appear on the bottom of every page, they appear only in small, dull gray text set against a gray background at the very bottom of the page (*see id.* ¶ 12, Ex. 6)—precisely where users would not reasonably expect to find binding contractual terms. Just as in *Berman*, "[t]he text disclosing the existence of the terms and conditions on these websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements . . . [a]nd the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. Far from meeting the requirement that a webpage must take steps 'to capture the user's attention and secure her assent,' the design and content of these webpages draw the user's attention away from" the Website Terms link. 30 F.4th at 856–57. Moreover, "while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent internet user that a clickable link exists." *Id.* at 857. Here, there is no visible link to the Website Terms when a user first accesses the website; rather one must scroll to the very bottom of the webpage and even then, it's not always visible. Thairani Decl. ¶¶ 3–13, Exs. 1–6; *see also Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), aff'd, 380 F. App'x 22 (2d Cir. 2010) (applying New York law, which is the same as California law, to find that an agreement was unenforceable because the plaintiff "could not even see the link to [the terms and conditions] without scrolling down to the bottom of the screen—an action that was not required to effectuate her purchase.").

Moreover, *even if* the Website Terms had been visible and reasonably conspicuous when Plaintiff first accessed the Website, Defendants cannot show that Plaintiff ever took any action to manifest his assent to those Terms. Simply clicking a button is legally irrelevant unless something "explicitly notif[ies] a user of the legal significance of the action," i.e., that the click "would constitute assent to those terms

and conditions." *Berman*, 30 F.4th at 858. The Ninth Circuit has squarely held that "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Nguyen*, 763 F.3d at 1179. Here, nothing in the cookie banner says that selecting options to reject cookies and the sale of data constitutes consent or agreement in any form to the Website Terms.

Further, the presence of a Privacy Notice link within the cookie banner does not establish assent to an entirely separate agreement—the Website Terms—accessible only through a different hyperlink that is exceedingly difficult to locate. "[M]erely clicking on a button on a webpage, viewed in the abstract, does not signify a user's agreement to anything. A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. Here, by clicking to reject Hollister's "Share or Sale of Personal Data," Plaintiff manifested nothing other than his decision to refuse advertising cookies. And even setting aside that the Website reflects a plainly unenforceable browsewrap, it would still fail the Ninth Circuit's inquiry-notice standard.

For the reasons set forth above, Defendants do not establish that Plaintiff Frankle agreed to the forum-selection clause or any of the Terms. He did not. Accordingly, Defendants' forum-selection clause has no bearing on its venue motion.

### 3. The Court Should Not Grant Permissive Transfer Under § 1404(a).

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Defendants fail to establish that the balance of convenience factors clearly and heavily favor transfer in this case. *See Visier, Inc. v. iCIMS, Inc.,* No. 24-cv-07544-SVK, 2025 LX 135024, at *4–5 (N.D. Cal. Feb. 24, 2025); *Flint v. UGS Corp.,* No. C07-04640, 2007 U.S. Dist. LEXIS 94643, at *3–4 (N.D. Cal. Dec. 12, 2007). In deciding a transfer motion, courts consider and weigh:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Visier,* 2025 U.S. Dist. LEXIS 32962, at *6–8 (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)). "A transfer is not appropriate if it 'merely shift[s] rather than eliminate[s] the inconvenience." *Id.* (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). This Court has, in fact, rejected far stronger transfer motions. *See, e.g., Visier*, 2025 U.S. Dist. LEXIS 32962, at *6–8; *Brown v. DetailxXPerts Franchise Sys., LLC*, No. 18-cv-02430-SVK, 2020 U.S. Dist. LEXIS 158441, at *16–19 (N.D. Cal. Aug. 31, 2020).

**a. Plaintiff's Choice of Forum Deserves Substantial Weight.**

Plaintiff Frankle chose to proceed in the Northern District of California. He resides in this District, was promised he could reject advertising cookies while accessing Defendants' website here, and was injured here. *See* Compl. ¶¶ 6, 12, 71–80. Accordingly, substantial weight should be given to his reasonable choice of forum. *See Visier*, 2025 U.S. Dist. LEXIS 32962, at *10 ("Ordinarily, '[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'"); *Imran v. Vital Pharm., Inc.*, No. 18-cv-05758-JST, 2019 U.S. Dist. LEXIS 59389, at *8–10 (N.D. Cal. Apr. 5, 2019) (giving weight to plaintiff's choice of forum in a consumer class action where the plaintiff resided in the district and rejecting the argument that the online nature of the transaction diminished that weight); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 778 (N.D. Cal. 2014) ("That only one of the seven named plaintiffs has a connection to this forum, when two others have a connection to the Central District, does not undermine the weight to be given plaintiffs' choice of forum."); *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803 EMC, 2011 U.S. Dist. LEXIS 72234, at *10–12 (N.D. Cal. July 6, 2011) (rejecting the defendant's argument that the plaintiffs' choice of forum should be given minimal weight and noting one of the plaintiffs resided in the Northern District, his claims arose there, and plaintiffs sought to represent not only a nationwide class but also a California subclass).

Despite this weight of authority, Defendants argue that Plaintiff's chosen forum should be given little deference. Their argument fails at every step. Defendants begin by asserting that deference is

diminished when "(1) the plaintiff's venue choice is not its residence, (2) the conduct giving rise to the claims occurred in a different forum, [and] (3) the plaintiff sues on behalf of a putative class[.]" ECF No. 21 at 26 (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)).

The first factor does not apply. Defendants rely on cases such as *Mora v. United States Customs & Border Prot.*, No. 3:24-cv-02430-TLT, 2024 LX 36251, at *22 (N.D. Cal. Nov. 4, 2024), and *Hope v. Lunarlandowner.com, Inc.*, No. 2:20-cv-01783-TLN-DB, 2022 U.S. Dist. LEXIS 35204, at *11 (E.D. Cal. Feb. 24, 2022), which suggest reduced deference where only one of multiple plaintiffs resides in the forum. However, these cases are moot because there is now only one named plaintiff, and he resides in this District. Courts evaluate deference based on the contacts of the plaintiff who remains before the Court, not plaintiffs who are no longer parties. Because Plaintiff Frankle resides in this District and alleges that his injury occurred here, the traditional rule affording substantial weight to a plaintiff's chosen forum applies.

Defendants' second argument fares no better. Although Plaintiff alleges that he was injured when Defendants unlawfully tracked his browsing activity in California, Defendants contend that the conduct giving rise to Plaintiff's claims occurred at their headquarters—the so-called "locus of decision making." ECF No. 21 at 27. This defendant-centric framing improperly elevates Defendants' own convenience and would apply to almost any case against them. Further, this framing is inconsistent with the fact that in online tracking cases like these, the "conduct giving rise to the claims" is the placement of tracking technologies on the plaintiff's device, all of which occur where the consumer is located. Defendants' reliance on *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 U.S. Dist. LEXIS 217426, at *25 (C.D. Cal. July 30, 2019) to suggest that a different rule applies in cases involving ***online services*** is misplaced; the court there exercised case-specific discretion under § 1404(a) and did not suggest that internet-based claims are governed by a distinct standard.

Third, Defendants argue that Plaintiff's forum choice deserves less deference because the proposed class includes non-Californians. However, it is California Class defined as "persons who browsed the [Defendants' Website] ***in the State of California*** after rejecting all non-essential cookies." Compl. ¶ 89 (emphasis added). Thus, the class necessarily includes almost entirely residents and individuals who were otherwise injured in California. In any event, Defendants overstate the significance of putative class status.

Courts in this District repeatedly reject the notion that a plaintiff's choice of forum is entitled to only minimal deference merely because the action is styled as a class action. *See Olosoni*, 2019 U.S. Dist. LEXIS 224896, at *11 ("Plaintiffs' choice of forum should be given great weight, and the general rule is not obviated by the fact that this case is a potential consumer class action."); *Heredia v. Sunrise Senior Living LLC*, No. 18-cv-00616-HSG, 2018 U.S. Dist. LEXIS 186749, at *13–14 (N.D. Cal. Oct. 31, 2018) (even in a class action, "courts still accord the plaintiffs' choice of forum . . . significant weight, so long as the named plaintiffs actually reside in or have some connection to the chosen forum") (internal quotation marks and citation omitted). The relevant inquiry is whether the named plaintiff resides in or has meaningful connections to the chosen forum, not whether unnamed, hypothetical class members might reside elsewhere. Defendants' reliance on *Brown v. Abercrombie & Fitch Co.*, No. 4:13-cv-05205 YGR, 2014 U.S. Dist. LEXIS 19414, at *11 (N.D. Cal. Feb. 14, 2014) to prove otherwise is misplaced. There, none of the named plaintiffs resided in the chosen forum, and a substantial portion of the alleged injury occurred in the transferee district. Even in *Van Meter v. Mondelez Int'l, Inc.*, No. 24-cv-00565-AMO, 2025 LX 114210, at *6 (N.D. Cal. Mar. 18, 2025), the court did not disregard the plaintiff's forum choice; it weighed that choice against transfer, notwithstanding that it was entitled to reduced deference.

The remaining cases Defendants cite are likewise distinguishable. *Cohn v. OppenheimerFunds, Inc.*, No. 09-cv-1656-WQH-BLM, 2009 U.S. Dist. LEXIS 106749, at *13 (S.D. Cal. Nov. 12, 2009), relied on authority specific to securities fraud, where misrepresentations are deemed to occur where statements are made and disseminated to the market. This case does not involve securities fraud. *Greben v. Cinmar, LLC*, No. 2:24-cv-10140-MRA-BFM, 2025 WL 1765916, at *16 (C.D. Cal. May 30, 2025), turned on the nationwide scope of the class and the absence of meaningful California-centered conduct. *Montenegro v. Johnson & Johnson Consumer, Inc.*, No. 2:24-CV-01895-SB-BFM, 2024 U.S. Dist. LEXIS 204949, at *7–9 (C.D. Cal. Sept. 16, 2024), similarly involved a nationwide class and overlapping actions pending in New Jersey, with transfer driven primarily by judicial economy. Finally, in *Williams v. Bowman*, 157 F. Supp. 2d 1106 (N.D. Cal. 2001), and *Burgess v. HP, Inc.*, No. 16-cv-04784-LHK, 2017 U.S. Dist. LEXIS 15801, at *19 (N.D. Cal. Feb. 3, 2017), none of the plaintiffs resided in or were injured in the chosen forum. That is not the case here.

Because Plaintiff Frankle resides in the Northern District and his claims arise from conduct and injury occurring here, his choice of forum was reasonable and entitled to substantial deference. This factor strongly weighs against transfer.

**b. Plaintiff's Lack of Any Contact With The Transferee Forum Weight Against Transfer.**

Defendants contend that they have "minimal claim-related contacts in the Northern District of California" and that their Ohio headquarters is the "factual center" of this case. ECF No. 27 at 21. That framing mischaracterizes both the Complaint and the governing venue inquiry. Venue is not determined by where a defendant is headquartered or where corporate policies are conceived in the abstract, but by where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Applied here, the relevant contacts are not marginal or attenuated; they are central and undisputed.

Furthermore, the core allegations of the Complaint are geographically specific. Plaintiff Frankle—now the sole plaintiff—resides in Oakland, California and accessed Hollister's website from his home where he read and relied on Hollister's express promise that users could reject "Share or Sale of Personal Data" cookies, and exercised that choice. Compl. ¶ 85. He was harmed when Defendants allegedly violated that promise by causing the placement of third-party tracking cookies on his device. *Id.* ¶¶ 6, 27–33, 74–85. Thus, the alleged misrepresentations were received in California; the cookie-banner interaction occurred in California; the rejection of cookies occurred in California; and the alleged interception and transmission of data occurred while Frankle's device was located in California. These are the operative facts that give rise to Plaintiff's claims. The Complaint further alleges that requests to Hollister's domain from California are routed through servers located in or near San Francisco. *Id.* ¶ 12. This reinforces the point that California is not merely a passive forum in which Plaintiff happens to reside. Rather, California is where Defendants' representations were encountered, where the alleged consent mechanism was invoked, and where the alleged injury occurred as to Plaintiff. Those contacts are sufficient to establish venue even if Defendants' broader corporate operations are centered elsewhere.

Defendants' attempt to reframe this case as Ohio-centered rests almost entirely on the location of their headquarters and internal decision-making. Courts in this District have repeatedly rejected that

approach. *See Imran*, 2019 U.S. Dist. LEXIS 59389, at *9–10 (rejecting argument that Northern District of California lacked connection to operative facts where California plaintiff made an online purchase, notwithstanding defendant's out-of-district headquarters); *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 U.S. Dist. LEXIS 89990, at *4–5 (N.D. Cal. June 12, 2017) ("That defendant is headquartered in Detroit and decides its policies there does not negate the local impact of its decisions when they are implemented elsewhere."). The same reasoning applies here.

Further, Defendants' argument disregards their substantial ***non-claim-specific*** contacts with California, which must also be considered under the *Jones* factors. Defendants maintain dozens of brick-and-mortar stores in California and conduct significant e-commerce in this District, while Plaintiff Frankle has no ties to Ohio whatsoever. *See Visier*, 2025 U.S. Dist. LEXIS 32962, at *6–8 (requiring consideration of "(4) the respective parties' contacts with the forum" ***and*** "(5) the contacts relating to the plaintiff's cause of action"). Defendants focus exclusively on the latter and ignore the former entirely. Because Plaintiff's claims are strongly connected to this District and both parties have meaningful ties to California, this factor weighs against transfer.

**c. The Convenience of the Party-Witnesses Favors Denial of Transfer.**

Defendants submit the declaration of Christina Monaco, Director of Data Strategy and Governance at Hollister. *See* ECF No. 23 ¶ 2. But the declaration fails to identify any burden or disruption it would face from having this litigation proceed in the Northern District other than boilerplate arguments that are routinely rejected in this District. *See, e.g., Visier*, 2025 U.S. Dist. LEXIS 32962, at *8 ("Defendant offers no evidence why its 'books and records' cannot be produced electronically or shipped with relative ease.").

Ms. Monaco identifies several A&F/Hollister employees with knowledge of the website's technologies—including Karla Dixon (Director of Digital Decision Science), Anthony Mujic (VP, Digital Engineering & Architecture), and an unnamed Senior Data Analyst—as individuals who work in Ohio or remotely from New Jersey. But Monaco does not explain why any depositions could not be taken by videoconference, or why travel to California would be required or problematic for any of them. Further, for Defendants' employees, "inconvenience is 'entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum." *Visier*, 2025 U.S. Dist. LEXIS 32962, at *8.

In light of Plaintiff Frankle's residence in this District, Plaintiff's choice of counsel (who are located in the N.D. California), and Defendants' failure to identify any particular burden it would face from the continuation of this litigation in the Northern District, the convenience of the parties does not weigh against Plaintiff's chosen forum or in favor of transfer. At best, it is neutral. *See Hendricks v. StarKist Co.*, No. 13-cv-729 YGR, 2014 U.S. Dist. LEXIS 41718, at *10–11 (N.D. Cal. Mar. 25, 2014) (holding that a corporate defendant's contention that the transportation of its employees would be inconvenient and costly was not a sufficient justification for a transfer); *Lax*, 65 F. Supp. 3d at 779–80 (noting "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum," and concluding this factor had little weight overall); *Olosoni*, 2019 U.S. Dist. LEXIS 224896, at *12–13 (finding the convenience of the parties was neutral because a transfer should not merely shift rather than eliminate inconvenience, corporations can absorb litigation costs better than individuals, and deposition locations can be set to avoid inconvenience to individuals); *see also In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011) (noting "the Court must be careful to avoid a transfer that would merely shift rather than eliminate the inconvenience of costs" and that corporations are better-equipped than individuals to absorb increased litigation costs) (internal quotation marks and citations omitted).

**d. The Convenience of Non-Party Witnesses Weighs Against a Transfer.**

In assessing the convenience to potential witnesses, courts focus on the convenience of ***non-party*** witnesses and place little weight on the convenience of party witnesses. *See Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.,* No. 15-cv-02106-RS, 2015 U.S. Dist. LEXIS 95004, at *4 (N.D. Cal. July 21, 2015) (noting "courts consider the convenience of non-party witnesses to be more important than the convenience of party witnesses;" explaining that the defendants' current and former witnesses would still be deposed in convenient locations; and concluding that any remaining inconvenience did not "surpass the threshold required to upset plaintiff's choice of forum"); *Hendricks*, 2014 U.S. Dist. LEXIS 41718, at *10–11 (holding the defendant's failure to identify any inconvenienced non-party witnesses weighed against the motion); *Lax*, 65 F. Supp. 3d at 779 (placing little weight on the convenience of employee witnesses); *see also Jones*, 211 F.3d at 498–99 (describing this factor as "the availability of compulsory process to compel attendance of *unwilling non-party* witnesses") (emphasis added). In other

words, a corporate defendant cannot double the small weight given to the convenience of its party witnesses simply by placing them in two categories: party convenience and witness convenience.

Moreover, a defendant seeking to transfer a case must name witnesses, identify where witnesses are located, and explain the anticipated testimony and its relevance. *See Visier*, 2025 U.S. Dist. LEXIS 32962, at *8; *Hendricks*, 2014 U.S. Dist. LEXIS 41718, at *11–12 (rejecting the defendant corporation's argument that the convenience of its party witnesses justified a transfer, and noting the company did not refer to "the non-party witnesses with which this factor is chiefly concerned"); *Cal. Writer's Club v. Sonders*, No. C-11-02566 JCS, 2011 U.S. Dist. LEXIS 113699, at *38–39 (N.D. Cal. Oct. 3, 2011) (denying a motion to transfer where the defendant (a) failed "to state with any particularity why participation in litigation in the Northern District would impose a significant burden on any individual witness" and (b) provided insufficient details regarding the subject matter of the witnesses' testimony); *Flint*, 2007 U.S. Dist. LEXIS 94643, at *9–10 (finding that the defendant had not provided sufficient evidence to substantiate its argument that a transfer would be more convenient for witnesses); *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008).

Plaintiff believes that key third-party witnesses will include representatives from Google/DoubleClick, Adobe (Omniture/Omtrdc.net), and Tealium—entities whose tracking technologies Hollister caused to fire and transmit data from users even after they rejected advertising cookies. Thairani Decl. ¶ 14. Each of these companies maintains its headquarters in California and will have relevant evidence regarding the operation, configuration, and behavior of their technologies on Hollister's website. Defendants, by contrast, rely largely on the convenience of their own employees. And the only non-party witnesses they identify, two OneTrust employees, are located in Atlanta, not Ohio. Transferring this case to Ohio does not make their appearance any more likely or convenient. Where, as here, the overwhelming number of true third-party witnesses are in California, the Northern District is plainly the more convenient forum. *See Brackett*, 619 F. Supp. 2d at 821; *Lax*, 65 F. Supp. 3d at 780 ("The convenience of non-party witnesses is the most important convenience factor; more important than the convenience of party witnesses."). Depositions will be conducted at mutually convenient locations—or via videoconference, as is routine—further reducing any burden. This factor favors denying transfer.

**e. Ease of Access to Evidence Is a Neutral Factor.**

In this case, most of the documentary evidence will be in electronic form, exchanged between counsel by electronic means, and the process of gathering and producing documents will not be affected by the forum in which the action is pending. Accordingly, this factor is neutral in this case. *See Visier*, 2025 U.S. Dist. LEXIS 32962, at *8 ("Defendant offers no evidence why its 'books and records' cannot be produced electronically or shipped with relative ease."); *Consumer Fin. Prot. Bureau*, 2015 U.S. Dist. LEXIS 95004, at *16 ("Given the reality of electronic communication and transmission, ease of access to the evidence is a neutral factor.") (internal quotation marks omitted); *Olosoni*, 2019 U.S. Dist. LEXIS 224896, at *13–14 ("Given the electronic nature of most corporate files in the current age, and particularly given that the facts of this case pertain directly to an online advertising campaign, the Court finds this argument nugatory. The relevant information will likely be equally easy to produce in either district."); *Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 U.S. Dist. LEXIS 146020, at *18 (N.D. Cal. Apr. 7, 2010) (noting that "the fact that records are located in a particular district is not itself sufficient to support a motion for transfer" and that "given today's technological advancements, the ability to transfer electronic documents is generally not difficult or burdensome").

Here, Defendants offer no evidence on this factor at all. They identify no physical documents, no categories of records that cannot be produced electronically, and no burden associated with producing materials in this District. Without such a showing, Defendants have not met their burden to demonstrate that access to proof favors transfer. *See Visier*, 2025 U.S. Dist. LEXIS 32962, at *8; *Flint*, 2007 U.S. Dist. LEXIS 94643, at *10–11 (finding that the defendant failed to demonstrate this factor favored a transfer where the defendant argued that relevant information was contained in records kept at its office located in the Central District but failed "to demonstrate the extent of necessary evidence, whether the evidence is composed of hard copies which would need to be reproduced and moved, or whether the evidence is electronic in form and could be reproduced in physical form at any location"). This factor is neutral.

**f. Familiarity with Applicable Law and Feasibility of Consolidation Favor Denying the Transfer.**

Familiarity with the governing law also weighs against transfer. This is a California class action asserting claims under California law, and "it is self-evident that this Court is more familiar with that law."

*Visier*, 2025 U.S. Dist. LEXIS 32962, at *8. No related actions exist in Ohio, and there is no prospect of consolidation. A transfer would simply burden another court with unfamiliar law and yield no efficiencies.

**g. Interest in the Controversy Weighs in Favor of Denying the Transfer.**

This District has a special interest in protecting California consumers' data privacy rights and in regulating businesses that collect consumer data throughout California. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 765 (9th Cir. 2025) (Collins, J, concurrence) ("That suffices to bring this case within the settled principle that, 'because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection,' a State 'has an special interest in exercising judicial jurisdiction over those who *commit torts within its territory*.'"); *Imran*, 2019 U.S. Dist. LEXIS 59389, at *15–16 (finding that the Northern District of California's interest in protecting residents from deceptive practices tended to outweigh another district's interest in curbing fraudulent practices by a business headquartered in that district). At a minimum, this factor is neutral. *See Hendricks*, 2014 U.S. Dist. LEXIS 41718, at *18–19 (finding the competing local interests were neutral, where California had an interest in protecting its residents and Pennsylvania had an interest in monitoring unlawful behavior of companies within its borders); *Sonoda*, 2011 U.S. Dist. LEXIS 72234, at *7 (finding that the local interest factor was neutral "because, on the one hand, California has an interest in protecting its consumers, but, on the other hand, Georgia has an interest in regulating its own corporations").

In these circumstances, this District's interest in protecting California citizens pursuant to California statutes is balanced against the other district's interest in regulating companies located in that district, and the local interest factor either weighs against transfer or is neutral.

**h. Relative Court Congestion Is Neutral.**

Defendants argue that Ohio has less Court congestion. However, modest differences in docket congestion carry little weight in the transfer analysis. *See Getz v. Boeing Co*., 547 F. Supp. 2d 1080, 1085 (N.D. Cal. 2008) (finding that a four-and-a-half-month difference in median time to disposition was not significant enough to favor transfer); *Strigliabotti v. Franklin Res., Inc.*, No. C 04-0883 SI, 2004 U.S. Dist. LEXIS 31965, at *21–22 (N.D. Cal. Oct. 5, 2004) (finding a 2.7-month difference "weighs slightly in favor of transfer" yet still denying transfer). Accordingly, this factor is neutral.

**4. Defendants' Improper-Venue Argument as to Salinas Is Both**

**Incorrect and Moot.**

Defendants' venue argument as to Plaintiff Salinas is moot because Ms. Salinas is no longer a party to this action. Once she ceased to be a plaintiff, there was no venue analysis left to perform as to her claims, and Defendants' challenge under 28 U.S.C. § 1391 necessarily evaporated. Defendants do not dispute that Plaintiff Frankle resides in this District, accessed Defendants' Website here, and suffered his alleged injury here. Those California-based operative facts are more than sufficient to establish venue under § 1391(b)(2) because a substantial part of the relevant events occurred within the District. And because venue is proper, 28 U.S.C § 1406 is inapplicable. In any event, even if Ms. Salinas remained in the case, Defendants' theory—that venue must be independently proper for each plaintiff is incorrect. *See Beyard v. Pentagon Fed. Credit Union*, No. 1:21-cv-01063-KJM-SAB, 2025 U.S. Dist. LEXIS 130821, at *15 (E.D. Cal. Feb. 5, 2025) (applying the doctrine of "pendent venue," which permits a district court to adjudicate claims that fall short of the venue requirements in § 1391(b) if other claims in the case do meet those requirements, provided that "doing so is justified by 'principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants,'" quoting *Unique v. Claybaugh*, 712 F. Supp. 3d 1265, 1272 (N.D. Cal. 2024)).

**C. Defendants' Motion to Compel Arbitration Must Be Denied.**

**1. The Motion to Compel Arbitration Fails for the Same Reasons as the Transfer Motion: It Is Based on Unenforceable Browsewrap.**

Just as in their Motion to Transfer, Defendants argue that the arbitration provision is presumptively valid. That argument assumes the existence of a valid agreement. At the threshold, the party seeking to compel arbitration bears the burden of proving the existence of an agreement by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). Defendants fail to meet that burden with respect to Plaintiff Frankle for the same reasons they fail to prove the existence of enforceable forum-selection clause: Plaintiff Frankle never assented to Defendants' Terms.

Nearly all of Defendants' arguments regarding contract formation concern Plaintiff Salinas, whom Defendants contend agreed to arbitration by enrolling in the Hollister Rewards program and making online purchases. See ECF No. 22 at 18–21. In fact, Defendants concede that they do not know "whether [Plaintiff Frankle] also agreed to the Rewards Terms." ECF No. 26 at 20–21. Defendants' entire argument

as to Frankle reduces to the unsupported assertion that he agreed to the Website Terms merely by browsing the website. Monaco Decl. ¶ 44. Under controlling Ninth Circuit authority, and as explained in Section B.2 *supra*, merely browsing a website does not constitute assent to contract. *Nguyen*, 763 F.3d at 1178–79.

Defendants' other arguments regarding Frankle's purported assent are preposterous. For example, they quote the Website Terms themselves, which advise state that they "apply to all visitors, or users of, this Website[]." ECF No. 23 at 16. That circular argument assumes that the Terms are binding in the first place. But they are not (because they were not conspicuously presented to Frankle and he did not manifestly agreed to them). A website operator cannot establish assent by invoking language contained in an agreement that was never shown to the user. Defendants also argue that the cookie banner that Plaintiff interacted with included a link to the Privacy Notice and that the Privacy Notice references the Terms.[3] But that is insufficient to put someone on inquiry notice of the Terms, especially because the Privacy Notice is not a contractual document and there was no button or language that made it clear that Plaintiff's browsing would constitute a binding agreement.

Defendants also cite this Court's decision in *Pizarro v. QuinStreet, Inc.,*22-cv-02803-MMC, 2022 U.S. Dist. LEXIS 145556, at *8 n.4 (N.D. Cal. Aug. 15, 2022) stating that there is no "bright-line rule" requiring particular design elements to establish inquiry notice of its Terms. That principle is irrelevant here. Defendants make no argument that the Website Terms were reasonably conspicuous or that Frankle had actual or constructive notice of them. They do not provide screenshots of the relevant versions of the webpages at issue, or explain how any interaction with the site could have manifested assent. Because Defendants cannot demonstrate notice or assent, their argument fails as a matter of law. Where evidence of agreement is absent or equivocal, arbitration must be denied. *Johnson*, 57 F.4th at 681.

Defendants' also point to *L.B. v. LinkedIn Corp.,* No. 5:24-cv-06832-EJD, 2025 LX 424480, at *31 (N.D. Cal. Sep. 30, 2025) but that case is also inapposite. There, the plaintiff was presented with a cookie banner expressly stating that clicking a button constituted agreement to the Cookie Policy, which formed the basis of the claims. Here, by contrast, Defendants do not contend that Frankle was ever shown

[3] The document in question was described as a Privacy Notice in the cookie banner hyperlink that is shown in Plaintiffs' complaint. Compl. ¶ 1.

any banner, hyperlink, or disclosure stating that merely browsing the website would constitute agreement to the Terms.

**2. Defendants' Equitable-Estoppel Theory Fails.**

Defendants' fallback argument—equitable estoppel—also fails. Defendants contend that Plaintiff Frankle is estopped from denying that he assented to the Terms because the Complaint references Hollister's Privacy Notice. Nonsense. Plaintiff referenced the Privacy Policy as evidence of *Defendants'* knowledge and intent, including knowing conduct directed at California (Compl. ¶¶ 17, 26), not to suggest that Plaintiff was aware of the Privacy Policy *while browsing*, and certainly not to enforce the Terms against Defendants. Compl. at 11 n.2 ("Plaintiffs did not read the privacy policy."). Moreover, the Privacy Notice is not a contract. Its own title, "Privacy Notice," confirms that it is a disclosure document, not an agreement. Plaintiff references it only as evidence of Hollister's data-collection practices and intent. Referencing a noncontractual notice does not constitute an attempt to enforce it. Plaintiff Frankle does not seek to vindicate any rights under the Privacy Notice. Instead, he challenges Hollister's deceptive cookie-consent representations and unlawful interception of his data, conduct that exists independently of the Privacy Notice.

Nor is there any prejudice or detrimental reliance that could support equitable estoppel. *See Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1506 (2012) (estoppel requires detrimental reliance). And nothing in Frankle's pleading induced Defendants to act to their detriment—Defendants would be making the same motion today even if the Complaint had omitted any reference to the Privacy Policy.

If anything, it is Defendants who attempt to shift positions. They rely on the Privacy Notice only to manufacture estoppel while simultaneously insisting that the operative Terms—not the Privacy Notice—contain the arbitration clause they seek to enforce. They cannot selectively invoke a ***non-contractua***l ***privacy notice***, which contains no arbitration provision, to compel arbitration. Because Defendants cannot show that Plaintiff is simultaneously seeking to enforce and avoid the Terms, that Defendants have detrimentally relied on any purported effort by Plaintiff to enforce the Terms, or that there is any inconsistency in Frankle's position at all, their estoppel argument fails.

Defendants' reliance on *Bender v. Twilio Inc.,* No. 24-cv-04914-AMO, 2025 LX 361447, at *5 (N.D. Cal. Aug. 11, 2025) is misplaced. There, the court first found that the plaintiff indisputably assented

to the Calm Terms of Service, which contained an arbitration clause, and that his claims turned on whether those contractual terms and the incorporated Privacy Notice authorized the challenged data transfers. *Id.* at *14–15. The court applied equitable estoppel to prevent the plaintiff from invoking that contractual consent framework while simultaneously disclaiming the arbitration provision contained in the same agreement. Here, by contrast, Plaintiff did not assent to the Terms and does not rely on them to establish liability. Absent assent or affirmative invocation of a contract, there is no inconsistency for equitable estoppel to remedy.

**3. Salinas's Alleged Assent Cannot Be Imputed to Frankle.**

Plaintiff Salinas is no longer a party. Her dismissal eliminates any basis for relying on her conduct to bind the only remaining plaintiff, Frankle. Arbitration agreements are personal contracts; they bind only those who actually assent to them. A plaintiff who never saw, never clicked, and never agreed to any alleged terms cannot be forced into arbitration based on what a different, now-dismissed plaintiff supposedly did.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to transfer and to compel arbitration should be denied in full.

Dated: December 19, 2025

Respectfully submitted,

/s/ Rajiv V. Thairani

**GUTRIDE SAFIER LLP**
Seth A. Safier, Esq.
Marie McCrary, Esq.
Rajiv V. Thairani, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

*Attorneys for Plaintiff Frankle*